# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERROLD GOLDBERG, ) | |
| ) | |
| Plaintiff, ) | Case No. 14 C 1440 |
| ) | |
| v. ) | Judge Joan H. Lefkow |
| ) | |
| CHICAGO SCHOOL FOR PIANO ) | |
| TECHNOLOGY, NFP; PAUL REVENKO- ) | |
| JONES, ROBERT GUENTHER; and ) | |
| OKSANA REVENKO-JONES, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Jerrold Goldberg filed suit against defendants alleging violations of Title III of the Americans with Disabilities Act ("the ADA") and § 504 of the Rehabilitation Act of 1973 ("the Rehabilitation Act"). Goldberg also alleges two state law claims: a violation of the Illinois Human Rights Act ("the IHRA") and a breach of contract claim. Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Dkt. 22.) For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

The Chicago School for Piano Technology ("the School") teaches students how to tune and repair pianos. (Dkt. 3 ("Compl.") ¶ 17.) Paul Revenko-Jones is the School's director and Robert Guenther is the School's president and one of its instructors. (*Id.* ¶¶ 7–8.) Oksana Revenko-Jones is an administrator and secretary. (*Id.* ¶ 9.) Goldberg enrolled in classes at the

---

[1] Unless otherwise noted, the following facts are taken from the amended complaint and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

School in the fall of 2011.  (*Id.* ¶ 19.)  He spent over $28,000 on tuition and related expenses.  (*Id.*)

Goldberg suffers from Attention Deficit Disorder and test anxiety.  (*Id.* ¶ 13.)  Upon enrollment, Goldberg disclosed his disabilities to Paul and Oksana Revenko-Jones.  (*Id.* ¶ 20.)  He told Guenther about his disabilities after his first class.  (*Id.*)

While enrolled at the School, Goldberg made several requests to defendants for reasonable accommodations for his disabilities, including extended time to complete exams and the use of an electronic tuning device to assist him in tuning pianos.  (*Id.* ¶ 21.)  On each occasion, defendants denied his requests.  (*Id.* ¶ 22.)  Goldberg claims that, as a result, he did not pass a practical tuning exam.  (*Id.* ¶ 23.)  On April 18, 2012, after being denied another request for accommodation, Goldberg told Paul Revenko-Jones that, although he did not plan to report the School to the Department of Education yet, he would "put things in motion" that coming Friday.  (*Id.* ¶ 24 (internal quotation marks omitted).)  Also on April 18, the School notified Goldberg that he had been placed on academic probation six weeks earlier.  (*Id.* ¶ 61.)

On May 11, 2012, after defendants denied his request to retake the tuning exam, Goldberg told Paul Revenko-Jones that he was going to "contact the right people" about the School's treatment of him.  (*Id.* ¶ 25.)  In response, Paul Revenko-Jones revoked Goldberg's academic probation and "dismissed him"—effectively expelling Goldberg from the School.  (*Id.*)  According to the student handbook, if the School places a student on academic probation, it must provide the student with "a variety of remedial options."  (*Id.* ¶ 64.)  The handbook also states that a student on academic probation will have "until the end of the following quarter" to improve his academic standing.  (*Id.* (internal quotation marks omitted).)

Almost a year later, on February 19, 2013, Goldberg filed a charge of discrimination against defendants with the Illinois Department of Human Rights. (*Id.* ¶ 26.) The Department dismissed his claim for lack of jurisdiction on December 5, 2013 (*id.* ¶ 27), and Goldberg filed the present suit on February 28, 2014 (*see* dkt. 1.) Goldberg brings claims under the ADA, the Rehabilitation Act, the IHRA, and also alleges breach of contract. Goldberg seeks $1,000,000 in compensatory damages and $2,000,000 in punitive damages plus costs and attorney's fees. He does not request injunctive relief.

## ANALYSIS

Defendants bring their motion under Federal Rule of Civil Procedure 12(b)(6), alleging that Goldberg fails to state a claim upon which relief can be granted. Not all of defendants' arguments, however, are correctly presented. Defendants' objections to Goldberg's IHRA claim are jurisdictional and should have been brought under Rule 12(b)(1).[2] Defendants' arguments concerning Goldberg's ADA claim are *not* jurisdictional, despite defendants' use of the term "subject-matter jurisdiction," and are properly considered under Rule 12(b)(6). Thus, the court will consider Goldberg's IHRA claim under Rule 12(b)(1) and his ADA claim under Rule 12(b)(6). The court will consider Goldberg's remaining claims under Rule 12(b)(6).

### I.    Subject-Matter Jurisdiction

#### A.    Legal Standard

Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit. *McCready* v. *White*, 417 F.3d 700, 702 (7th Cir. 2005) (citing *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to assert a "lack of subject-matter

---

[2] One of defendants' objections to Goldberg's IHRA claim, however, *is* properly analyzed under Rule 12(b)(6) and thus will be considered according to that standard.

jurisdiction" defense to a plaintiff's claims. Fed. R. Civ. P. 12(b)(1). These challenges can be facial (that the plaintiff's allegations, even if true, fail to support jurisdiction) or factual (conceding that the allegations are sufficient but offering contrary evidence). *Apex Digital Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Defendants do not specify whether their challenge is facial or factual. Because their arguments address Goldberg's allegations without offering contrary evidence, the court construes defendants' challenge as facial. Thus, the court will "not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." *Id.* at 444; *see also Wolfram* v. *Wolfram*, No. 14 C 04105, 2015 WL 231808, at *2 (N.D. Ill. Jan. 16, 2015).

**B.    IHRA Claim**

Goldberg claims that defendants violated the IHRA by denying him full access to the School's services. (Compl. ¶ 54–55.) Defendants argue that the court does not have subject-matter jurisdiction over the claim and insist that the court "should not permit Plaintiff to disregard the comprehensive scheme of procedures set forth within the IHRA." (Dkt. 22 at 10.) Instead, defendants argue that the court should "send Plaintiff back to [the] Department and the Commission to pursue further proceedings, if any." (*Id.*)

The IHRA prohibits unlawful discrimination "in connection with employment, real estate transactions, access to financial credit, and availability of public accommodations." 775 Ill. Comp. Stat. 5/1-102; *Blount* v. *Stroud*, 904 N.E.2d 1, 6, 232 Ill. 2d 302, 328 Ill. Dec. 239 (2009). To achieve this objective, the IHRA created the Department of Human Rights ("the Department") and the Human Rights Commission ("the Commission"). *See* 775 Ill. Comp. Stat. 5/1–103(E), (H). The Department investigates charges and the Commission reviews the Department's findings and adjudicates complaints. *Blount*, 904 N.E.2d at 7. Together, the

4

IHRA, the Department, and the Commission "establish comprehensive administrative procedures governing the disposition of alleged civil rights violations." *Id.* at 7 (citing 775 Ill. Comp. Stat. 5/ arts. 7A, 7B, 8A, 8B; 56 Ill. Adm. Code § 2520.10 *et seq.*; 56 Ill. Adm. Code § 5300.10 *et seq.*).

The IHRA requires that a complainant file a charge with the Department within 180 days of the alleged violation. *See* 775 Ill. Comp. Stat. 5/7A–102(A). Once the Department investigates the charge and issues a report, the complainant has the option, which must be exercised within ninety days of receiving the report, of proceeding before the Commission or commencing a civil action in circuit court. *See id.* 5/7A–102(D).

On February 19, 2013, Goldberg filed a charge of discrimination against defendants. (Compl. ¶ 26.) On December 5, 2013, the Department dismissed the claim for lack of jurisdiction. (*Id.* ¶ 27.) The notice of dismissal stated that if Goldberg disagreed with the Department's finding, he could seek review before the Commission or he could "commence a civil action in the appropriate state circuit court within ninety days" after receipt of the notice. (Dkt. 22-4 at 2–3.)[3] Goldberg timely filed the present case on February 28, 2014. (*See* dkt. 1.)

Defendants argue that the court does not have subject-matter jurisdiction over Goldberg's IHRA claim because Goldberg disregarded the statute's administrative procedures by bringing the claim in federal court. (Dkt. 22 at 10.) Defendants' argument is incorrect and outdated. Under an earlier version of the IHRA, judicial review of an alleged violation was available only

---

[3] Although the court considers defendants' challenge to its subject-matter jurisdiction facial, and therefore limits itself to the allegations set forth in the complaint, the court still takes judicial notice of matters of public record. *Henson* v. *CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *United States* v. *Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). This includes records of the Illinois Department of Human Rights. *See, e.g.*, *Anderson* v. *Ctrs. for New Horizons, Inc.*, 891 F. Supp. 2d 956, 959–60 (N.D. Ill. 2012) (taking judicial notice of a right-to-sue letter); *see also McGee* v. *United Parcel Serv., Inc.*, 2002 WL 449061, *2 (N.D. Ill. Mar. 22, 2002) ("the court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR").

5

after the Commission issued a final order. *See Flaherty* v. *Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir. 1994). In 2008, the Illinois legislature amended the IHRA to grant original jurisdiction over IHRA claims to both the Commission and Illinois circuit courts. *See* Pub. Act 95–243; 775 Ill. Comp. Stat. 5/7A–102; *De* v. *City of Chicago*, 912 F. Supp. 2d 709, 731 (N.D. Ill. 2012). Although the Seventh Circuit has not addressed the issue, an "overwhelming majority" of district courts in this Circuit have held that federal courts may now exercise supplemental jurisdiction over IHRA claims pursuant to 28 U.S.C. § 1367(a). *De*, 912 F. Supp. 2d at 731 (citing, among others, *Hoffman* v. *Bradley Univ.*, No. 11–1086, 2012 WL 4482173, at *1 (C.D. Ill. Sept. 27, 2012) ("The complaint also included claims arising under [the] Illinois Human Rights Act. Supplemental jurisdiction over those claims is found under 42 U.S.C. § 1367."); *Massenberg* v. *A & R Sec. Servs., Inc.*, No. 10–CV–7187, 2011 WL 1792735, at *5 (N.D. Ill. May 11, 2011) ("This court finds . . . that federal courts can exercise supplemental jurisdiction over IHRA claims.")). Thus, the court, like others in this Circuit, concludes that it has subject-matter jurisdiction over plaintiff's IHRA claim pursuant to 28 U.S.C. § 1367(a).

Defendants also argue that the court does not have subject-matter jurisdiction over Goldberg's IHRA claim because the Department's dismissal for lack of jurisdiction controls the court's determination of its own jurisdiction. (Dkt. 22 at 8–10.) Defendants cite no legal authority for this argument. Nor is defendants' assertion supported by common sense: if the Department's dismissal prohibited other courts from exercising jurisdiction over claims under the IHRA, the Department would not, in its notice of dismissal, inform complainants of their right to bring an action in circuit court. The court rejects the proposition that a determination made by a state administrative body, within a scheme that allows for judicial review, limits the court's jurisdiction. Thus, the court has subject-matter jurisdiction over Goldberg's IHRA claim.

6

## II. Failure to State a Claim

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011); *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, --- L. Ed. 2d --- (2014) (per curiam) (citation omitted).

In evaluating a motion to dismiss under Rule 12(b)(6), the court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in plaintiff's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky* v. *City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

7

### B. ADA Claim

Goldberg alleges two violations of Title III of the ADA: failure to accommodate and retaliation. Defendants argue that the court lacks "subject matter jurisdiction" over both counts because a plaintiff cannot seek damages under Title III of the ADA, and damages are the only type of relief Goldberg requests. (Dkt. 22 at 3–4.) Although the question is not one of subject-matter jurisdiction, defendants are correct that private individuals seeking to enforce Title III can ask the court for injunctive relief only. *Scherr* v. *Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013); *Ruffin* v. *Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006).

Title III of the ADA prohibits discrimination against individuals with disabilities in places of public accommodation. 42 U.S.C. §§ 12181–89. The language of Title III's enforcement provision provides a remedy only to a person "who *is being subjected* to discrimination on the basis of disability" or who has "reasonable grounds for believing [he or she] is *about to be subjected* to discrimination . . . ." *See id.* § 12188(a)(1) (emphasis added). This language does not apply to Goldberg, whose complaint concerns past events and seeks only money damages. Because Goldberg does not seek injunctive relief, or even argue that any injunctive relief is available, the court grants defendants' motion to dismiss with respect to both counts under the ADA.

### C. Rehabilitation Act Claim

Goldberg alleges two violations of § 504 of the Rehabilitation Act: failure to accommodate and retaliation. As a preliminary matter, defendants are correct that punitive damages are not available in suits brought under the Rehabilitation Act. (Dkt. 22 at 4); *Barnes* v. *Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights

Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."). Defendants are incorrect, however, that Goldberg's request for compensatory and punitive damages warrants dismissal. (*See* dkt. 22 at 4.) Nor is a motion to strike necessary. (*See id.*) Should Goldberg prevail on his Rehabilitation Act claim, only compensatory damages will be available.

Defendants also argue that Goldberg's Rehabilitation Act claim should be dismissed with respect to the individual defendants, as the Rehabilitation Act does not recognize individual liability. (*Id.* at 5.) Section 504 of the Rehabilitation Act provides that

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). "Section 504 applies to federal financial assistance recipients." *Emerson* v. *Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing *United States Dep't of Transp.* v. *Paralyzed Veterans of Am.*, 477 U.S. 597, 605–06, 106 S. Ct. 2705, 91 L. Ed. 2d 494 (1986)). It is the organization, however, and not the individuals who receive the assistance. *Id.* Individual defendants, therefore, cannot be held liable under the Rehabilitation Act. *See id.*; *see also Dent* v. *City of Chicago*, No. 02 C 6604, 2003 WL 21801163, at *1 (N.D. Ill. Aug. 1, 2003). Thus, the court agrees with defendants that Goldberg has failed to state a claim against the individual defendants under § 504 of the Rehabilitation Act and that dismissal is appropriate. Plaintiff's Rehabilitation Act claim against the School, however, remains.

## D.     IHRA Claim

Defendants argue that even if the court has jurisdiction over Goldberg's IHRA claim, "the facts that Plaintiff alleged within his charge do not fall within the limited scope of

jurisdiction under the IHRA." (Dkt. 22 at 10.) The issue is not one of jurisdiction but of whether Goldberg has stated a claim upon which relief may be granted. Under the IHRA, the Department can only consider charges involving "(1) the failure to enroll an individual; (2) the denial of access to facilities, goods, or services; or (3) severe or pervasive harassment of an individual when the covered entity fails to take corrective action to stop the severe or pervasive harassment." 775 Ill. Comp. Stat. 5/5-102.2. Defendants maintain that "[t]his is a case where Plaintiff's charge involved allegations against a place of education related to curriculum content or course offerings," which, defendants note, are not covered under the IHRA. (*Id.* at 9, 10.) Although Goldberg does allege that the School denied him the use of an electronic tuning device (*see* Compl. ¶ 21), which could be considered curriculum content, Goldberg also alleges that the School denied him access to services. Specifically, Goldberg claims that the School "had an official anti-discrimination policy in their handbook" and that "defendants' denial of his requests for reasonable accommodations was a denial of full access to services normally provided by the CSPT." (*Id.* ¶¶ 54–55.) Goldberg further claims that defendants' "termination of his academic probation prior to the time allotted in the student handbook" and "subsequent dismissal" of him "constitute retaliation as defined by the IHRA." (*Id.* ¶ 56.) Thus, the court finds that the facts, as Goldberg has alleged them, state a claim under the IHRA.

  **E.** **Breach of Contract Claim**

  Finally, Goldberg alleges that defendants' violation of the student handbook is a breach of contract. The student handbook in effect when he was at the School outlined the School's academic probation policy. (*Id.* ¶¶ 54–55, 59, 64.) According to Goldberg, defendants published and distributed the handbook with the intention that they, and the students, be bound by its policies. (*Id.* ¶ 60.)

Goldberg claims that on April 18, 2012, he was notified that he had been placed on academic probation six weeks earlier. (*Id.* ¶ 61.) On May 11, 2012, Paul Revenko-Jones terminated that probation "two weeks earlier than the time allotted by the handbook." (*Id.* ¶ 62.) Goldberg notes that the handbook states that if a student is placed on academic probation he will be provided with a variety of remedial options and he will be offered until the end of the next quarter to improve his academic standing. (*Id.* ¶ 64.) Although Goldberg acknowledges that he was offered some remedial services—specifically, tutoring—Paul Revenko-Jones canceled most of the tutoring sessions. (*Id.* ¶ 65.) The student handbook also states that a student on probation will be given the opportunity to complete the course without being awarded the certification—an opportunity that Goldberg claims he was never given. (*Id.* ¶ 66.) Goldberg further alleges that he was not allowed the allotted time to improve his academic standing. (*Id.* ¶ 65.)

Defendants move to dismiss Goldberg's breach of contract claim for "lack of contractual privity." (Dkt. 22 at 7.) The only cases defendants cite in support, however, involve the application of the doctrine of privity of contract to substantively different claims. (*See id.* (citing *Spiegel* v. *Sharp Elec. Corp.*, 466 N.E.2d 1040, 1042, 125 Ill. App. 3d 897 (1984) (considering "whether plaintiff can recover solely economic losses on a warranty theory in the absence of privity"); *Waterford Condo. Ass'n* v. *Dunbar Corp.*, 432 N.E.2d 1009, 1011, 104 Ill. App. 3d 371 (1982) (observing that "[i]t is well settled in Illinois that, absent privity of contract, a purchaser or owner of real property has no cause of action against a defendant for breach of contract unless he can demonstrate that the contractual obligations and duties were undertaken for his direct benefit")).) Defendants do not explain how these cases counsel in favor of dismissing Goldberg's breach of contract claim. (*Id.*) Defendants provide no guidance beyond stating the elements of breach of contract (which, as defendants recite them, do not include

privity of contract), claiming that privity of contract "generally remains a requirement in all breach of contract cases" (citing to *Spiegel* and *Waterford*), and discussing *Spiegel*—an inapposite case concerning breach of warranty—at length. (*See id.*)  To the extent the individual defendants are contending they were not parties to the contract, they have failed to say so or demonstrate that fact with documents.  The court is unwilling to dismiss plaintiff's claim on the basis of defendants' arguments.

## CONCLUSION

For these reasons, defendants' motion to dismiss is granted in part and denied in part.

Date:   February 3, 2015  _____
                                                            U.S. District Judge